UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT CALHOUN,

                Plaintiff,         Civil Action No. 18-12753

                                 Honorable Stephen J. Murphy, III

v.                             Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [16, 18]

Plaintiff Robert Calhoun ("Calhoun") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #16, #18), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Calhoun is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(Doc. #18)** be **GRANTED**, Calhoun's Motion for Summary Judgment

(**Doc. #16**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.   REPORT

### A.   Background

Calhoun was 62 years old at the time of his alleged onset date of December 12, 2012, and at 5'10" tall weighed approximately 180 pounds during the relevant time period. (Tr. 171, 191).  He served in the United States Navy from 1971 to 1972; during that time, he was sexually assaulted by two fellow crew-members, which "triggered his life-long health issues."  (Doc. #16 at 3).  Nevertheless, he was able to work as an auto salesman for years, and later as a medical support assistant at the Veteran's Affairs ("VA") Hospital in Detroit, Michigan.  (Tr. 35-36, 42-43, 171-72).  He stopped working full-time in December 2012, and now alleges disability primarily as a result of post-traumatic stress disorder ("PTSD") stemming from the assault he suffered while in the Navy.  (Tr. 171, 193).  He receives VA disability benefits for this reason.  (Tr. 33).

After Calhoun's application for DIB was denied at the initial level on December 20, 2016 (Tr. 69-72), he timely requested an administrative hearing, which was held on July 5, 2017, before ALJ Roy LaRoche, Jr. (Tr. 25-54).  Representing himself, Calhoun testified at the hearing, as did vocational expert Diane Regan.  (*Id.*).  On December 6, 2017, the ALJ issued a written decision finding that Calhoun is not disabled under the Act.  (Tr. 9-20).  On August 8, 2018, the Appeals Council denied review.  (Tr. 1-5).  Calhoun timely filed for judicial review of the final decision on September 5, 2018.  (Doc. #1).

The Court has carefully reviewed the transcript in this matter, including Calhoun's

medical record, function and disability reports, and testimony as to his conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.     The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the

3

claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Calhoun is not disabled under the Act.  At Step One, the ALJ found that Calhoun has not engaged in substantial gainful activity since December 12, 2012 (the alleged onset date).  (Tr. 11).  At Step Two, the ALJ found that Calhoun has the severe impairments of PTSD and major depressive disorder.  (*Id.*).  At Step Three, the ALJ found that Calhoun does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  (Tr. 12).

The ALJ then assessed Calhoun's residual functional capacity ("RFC"), concluding that he is capable of performing the full range of work at all exertional levels, with the following non-exertional limitations: limited to simple, routine, and repetitive tasks involving only simple work-related decisions, with few, if any, workplace changes, in a work environment free of fast-paced production requirements; and can have occasional contact with supervisors, incidental contact with co-workers (no tandem tasks), and no contact with the public.  (Tr. 13-14).

At Step Four, the ALJ found that Calhoun is not capable of performing his past relevant work.  (Tr. 18).  At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Calhoun is capable of performing the jobs of sorter (200,000 jobs nationally), packer (300,000 jobs), and machine tender (100,000 jobs).  (Tr. 19).  As a result, the ALJ concluded that Calhoun is not disabled under the Act.  (Tr. 19-20).

### C.      Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The

court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D. Analysis

As set forth above, the ALJ found that Calhoun retains the mental RFC to perform simple, routine, and repetitive tasks involving only simple, work-related decisions, with few, if any, workplace changes, in a work environment free of fast-paced production requirements; and can have occasional contact with supervisors, incidental contact with co-workers, and no contact with the public. (Tr. 13-14).  Before this Court, Calhoun's sole argument is that the ALJ erred in concluding – from his volunteer work and other daily activities – that he can perform this range of unskilled work on a sustained basis.  (Doc. #16 at 6-9).  For the reasons set forth below, the Court disagrees and also finds that additional, substantial evidence supports the ALJ's mental RFC finding.

It is true that, in evaluating Calhoun's subjective allegations of disability, one of the

6

factors the ALJ considered was Calhoun's testimony that he was volunteering, on an as-

needed basis, with the University of Michigan's "Buddy-to-Buddy Program."[1]  (Tr. 16).

Specifically, regarding Calhoun's commendable volunteer work, the ALJ noted that

Calhoun:

> … alleged that he quit his job in 2012 with Veterans Affairs because
> he was going to be terminated due to excessive absences, but he
> testified that he volunteers several times monthly in a "buddy to
> buddy" program where he provides trained peer support to veterans
> and helps direct them to veteran mental health resources.  He testified
> it helps him to deal with his trauma.  The undersigned underscores
> that his volunteer work with Veterans Affairs is strikingly similar to
> that of his paid employment from 2010-2012 with Veterans Affairs.
> [Calhoun] testified that in his paid position, he scheduled
> appointments and arranged transportation for veterans.    In his
> volunteer position, he testified that he talks to veterans on the phone
> and assists them in finding community resources such as shelter.  In
> comparison to his paid position, his description of the volunteer work
> requires interaction with people and more problem solving skills.
> Although when questioned why [he] is able to volunteer for the
> [Buddy-to-Buddy Program] but not perform past work, he indicated
> that there was more pressure.

(*Id.*).

Calhoun argues that, in discounting his allegations of disability, in part, because of

his volunteer work, the ALJ "mistakenly equated [his] ability to volunteer to cope with his

own stress and trauma as being an indicator of his functional capacity."  (Doc. #16 at 7).

Specifically, he points out that his volunteer work "is based on a flexible case-by-case

schedule"; is frequently done from home by telephone or email, thus alleviating the stress

---

[1] This program pairs trained volunteer veterans with other veterans, helping them spot warning signs of depression and connecting them with resources.  *See* https://news.umich.edu/buddy-to-buddy-u-m-program-connects-veterans-in-pursuit-of-healthy-happy-post-military-life/  (last accessed January 13, 2020).

of reporting to work on a full-time basis; and "is an intrinsic part of his overall well-being and rehabilitation." (*Id.* at 6-7). But the premise of Calhoun's argument is flawed. Indeed, in considering Calhoun's volunteer work, the ALJ specifically noted that Calhoun volunteered only "several times monthly"; that volunteering "helps him to deal with his trauma"; and that his paid work involved "more pressure." (Tr. 16). Thus, contrary to Calhoun's assertions, the ALJ fairly evaluated Calhoun's testimony regarding his volunteer work and did not simply equate it with the capacity to "work in a routine unskilled job." (Doc. #16 at 7).

Calhoun also challenges the ALJ's decision to discount his allegations of disability, in part, as inconsistent with his activities of daily living. (*Id.* at 8). Specifically, Calhoun claims that merely because he "engaged in landscaping and decided to attend his son's wedding[] does not mean that he has the ability to start working on a sustained basis." (*Id.*). But again, the ALJ did not equate the two. Rather, the ALJ noted inconsistencies between Calhoun's allegations of disabling symptoms (he "testified that he isolates himself inside" and reported "anxiety and avoidance of crowds") and his actual activities ("riding his bike through his neighborhood," "perform[ing] daily landscaping," and "looking forward to traveling south for his son's wedding"). (Tr. 16). The ALJ was permitted to consider the fact that Calhoun's reported daily activities were inconsistent with his subjective allegations of disability as one of several reasons to discount those allegations. *See, e.g., Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("[T]he ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples'

8

testimony was credible."); *Daniels v. Comm'r of Soc. Sec.*, No. 16-13798, 2018 WL 1535396, at *5 (E.D. Mich. Mar. 29, 2018) (ALJ may properly consider daily activities as one factor in evaluating subjective allegations of disability).

In addition to Calhoun's volunteer work and daily activities, the ALJ relied on other, substantial evidence in discounting his allegations of disabling symptoms. For example, the ALJ noted that, on mental status examination, Calhoun's mood and affect varied from depressed to euthymic, but he generally had grossly intact memory and concentration, no difficulties with comprehension, and good insight and judgment. (Tr. 15; *see, e.g.,* Tr. 314, 316, 324, 328, 332, 335, 339, 344, 347, 350, 548, 550, 552, 554, 559, 561, 572). It was appropriate for the ALJ to note inconsistencies between Calhoun's subjective allegations of disability and the relevant medical evidence. *See, e.g., O'Connell v. Comm'r of Soc. Sec.*, No. 14-13690, 2015 WL 12683979, at *8-11 (E.D. Mich. Nov. 25, 2015) (ALJ properly discounted claimant's subjective complaints, in part, because they were inconsistent with mental status examination findings).

In evaluating Calhoun's subjective complaints, the ALJ also noted that the record showed improvement in Calhoun's symptoms with mental health treatment. For example, Calhoun was admitted to the hospital for a few days with depressive symptoms, anxiety, and suicidal ideations in May of 2013, but by the time of his discharge, he reported a better, happy, and hopeful mood, and he was calm and cooperative, with full affect, normal thoughts, and fair insight and judgment. (Tr. 430-32). Similarly, Calhoun was hospitalized from February 6 to 10, 2014, with increased depression, anxiety, and nightmares, but on discharge he was cooperative and pleasant, with constricted affect, normal thoughts, and

fair insight and judgment.  (Tr. 426-28).  And, from July 18 to 20, 2015, Calhoun was hospitalized with suicidal ideation; at that time, he reported drinking alcohol, smoking "4-5 joints of marijuana per day," and using "100$ worth of cocaine per week."  (Tr. 418).

After that point, however, Calhoun refrained from drinking and using drugs, and with mental health treatment through the VA, including medication and therapy, significantly reduced his symptoms.  As the ALJ noted, after Calhoun got sober, he consistently denied suicidal thoughts.  (Tr. 15, 311, 592, 612).  In November 2015, psychiatrist Laurie Boore observed that Calhoun was well-groomed and cooperative, with normal thoughts, no psychosis, and fair insight and judgment.  (Tr. 594).  In January 2016, Calhoun began therapy with VA psychologist Emily Stanley, which he characterized as a "game change[r] in a positive way."  (Tr. 555-56).  By April 2016, a depression screen showed "no depression," and Dr. Stanley observed that Calhoun had very good mood, euthymic affect, normal thoughts, and good insight and judgment.  (Tr. 537-38).  Indeed, Calhoun reported that he was feeling much better, his trauma symptoms were reduced, and he did "not have any remaining stuck points to work on."[2]  (Tr. 539).  And, although Calhoun left a message for Dr. Stanley in May 2016, indicating that he felt "down" after interacting with his ex-girlfriend, he subsequently cancelled a "booster" appointment, indicating that journaling, using his therapy tools, and attending meetings and church helped him work through his relationship issues.  (Tr. 534-36).  Later, in 2016 and 2017, records indicate that Calhoun continued to do well and feel stable, with largely normal

---

[2] As the ALJ noted, Calhoun discontinued treatment with Dr. Stanley within two months of being approved for VA disability benefits.  (Tr. 15).

mental status examinations.  (*E.g.,* Tr. 533, 627, 631).  It was appropriate for the ALJ to consider the effect of mental health treatment on Calhoun's impairments in discounting his subjective allegations of disability.[3]  *See* 20 C.F.R. § 404.1529(c)(3)(iv) and (v) (directing the ALJ to consider the effectiveness of medication and other treatment on a claimant's symptoms); *see also Alshimari v. Comm'r of Soc. Sec.*, No. 14-10778, 2015 WL 74576, at *11 (E.D. Mich. Jan. 6, 2015) (ALJ properly considered fact that plaintiff's depression was improving with therapy in evaluating the credibility of his allegations).

Additionally, the ALJ gave great weight to the opinions of the consultative examiners and the state agency psychologist in finding that Calhoun can perform a reduced range of unskilled work despite his mental impairments.  (Tr. 16-17).  Specifically, the ALJ noted that, in July 2016, Calhoun attended a consultative examination with Julia Czarnecki, M.A. and psychologist Herman Daladin.  (*Id.* (citing Tr. 612-15)).  Calhoun reported that he drove, cooked, and volunteered for various organizations.  (Tr. 613).  He did not present as anxious; showed average intelligence; and was cooperative, polite, and pleasant with reserved mood and constricted affect.  (*Id.*).  The examiners opined that Calhoun:

> … is not presenting with any acute psychiatric symptoms that would interfere with his ability to do work related activities, follow two or three step directions or appropriately interact with others.  He is reportedly fully independent with his [activities of daily living], manages his funds without assistance, he is getting along well with

---

[3] In his reply brief, Calhoun acknowledges that the "medical evidence may suggest that [he] is temporarily stable and not in therapy at the moment."  (Doc. #19 at 2).  He argues, however, that even though his mental impairments have "partially improved," he still "faces episodic deterioration in his condition," which the ALJ ignored.  (*Id.* at 5).  The problem with this argument is that Calhoun does not point to any specific evidence documenting an "episodic deterioration" in his condition after he successfully achieved sobriety; rather, the evidence indicates that, after July of 2015, Calhoun's condition improved and stabilized with treatment.

> family members, maintaining sobriety with external support and
> compliant with psychiatric medication.

(Tr. 614).  Similarly, the ALJ gave great weight to the August 2016 opinion of state agency

psychologist Natalie Rea-Michalak, who reviewed Calhoun's records and opined that,

despite his anxiety disorder, Calhoun retains the ability to perform simple, rote, repetitive,

unskilled work activity, with brief, occasional, and superficial social interaction.  (Tr. 17,

65-66).  Here, where the record contains no treating physician or psychologist opinion as

to Calhoun's functional limitations, the opinions of the consultative examiners and the state

agency psychologist provide substantial evidence in support of the ALJ's mental RFC

finding.  *See, e.g., Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 832 (6th Cir. 2009)

(finding the state agency experts' opinions "the strongest evidence supporting the ALJ's

finding" where there was "no medical evidence before the ALJ that contradicted" those

opinions); *Al-Saidie v. Comm'r of Soc. Sec.*, No. 16-10471, 2017 WL 3633126, at *6 (E.D.

Mich. Feb. 24, 2017) ("Absent functional assessments from treating doctors, RFC

assessments from medical reviewers is the best evidence of plaintiff's abilities and

limitations.").

Finally, the ALJ appropriately assessed the other opinion evidence in the record,

including from Sherry E. Brown, LMSW and Renee Turnbell, LMSW.  (Tr. 16, 18).  Ms.

Brown saw Calhoun on April 26, 2016, for a Social Work Triage Assessment.  (Tr. 445).

She provided a brief statement in the "Remarks" section of a Third Party Function Report,

opining that Calhoun's PTSD results in "days when he functions well; however, there are

periods of trauma and darkness … [which] eliminate daily routine."  (Tr. 202).  The ALJ

appropriately gave this opinion only limited weight because, as a social worker, Ms. Brown is not an "acceptable medical source" within the meaning of the regulations. (Tr. 16). This was an appropriate consideration. *See Soc. Sec. Rul. 06-03p*, 2006 WL 2329339, at *1-2 (Aug. 9, 2006). The ALJ also noted that Ms. Brown's opinion was completed with Calhoun's assistance and to his "satisfaction." (Tr. 16 (citing Tr. 445)). The ALJ's reasoning is further bolstered by Ms. Brown's finding on the same date she completed the Third Party Function report that Calhoun did not need case management services. (Tr. 445). Similarly, the ALJ discounted Ms. Turnbell's September 29, 2011 opinion, in which she noted that his traumas continue to "impact his daily social and vocational well being," in part, because Ms. Turnbell is not an acceptable medical source. (Tr. 18 (citing Tr. 269)); *see Soc. Sec. Rul. 06-03p*, 2006 WL 2329339, at *1-2. Moreover, the Court notes that this opinion precedes Calhoun's alleged onset date by more than one year, and Turnbell noted that Calhoun was "beginning to cope with [his flashbacks and nightmares] in a more healthy manner." (Tr. 269).

In sum, the ALJ thoroughly and evenly evaluated the record evidence, and made findings that are supported by substantial evidence. Accordingly, for all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #18**) be **GRANTED**, Calhoun's Motion for Summary Judgment (**Doc. #16**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: January 13, 2020                    s/David R. Grand
Ann Arbor, Michigan                        DAVID R. GRAND
                                           United States Magistrate Judge


### <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 13, 2020.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
